**B & D INVESTMENT COMPANY, INC., et al., Appellants,**

v.

**Charles SCHNEIDER, et al., Respondents.**

No. 63976.

Supreme Court of Missouri, En Banc.

Feb. 23, 1983.

Rehearing Denied March 29, 1983.

---

Ronald N. Compton, St. Louis, for appellants.

Thomas W. Wehrle, County Counselor, Karen C. Moculeski, Asst. County Counselor, Clayton, for respondents.

ALMON H. MAUS, Special Judge.

This appeal involves the question of whether or not a taxpayer's failure to comply with § 139.031(1) bars recovery of ad valorem taxes paid as the result of an invalid increase in assessed valuation. Obviously, this appeal by the taxpayer involves the construction of a revenue law. Jurisdiction is in this Court. Mo. Const. art. V, § 3.

The action was commenced by the taxpayer's petition seeking recovery against the named defendants as Assessor and Collector of St. Louis County. After discovery, the motion of the defendants for a summary judgment was sustained. The propriety of that judgment will be measured by the facts developed in connection with that motion most favorable to the taxpayer.

A very simplified statement of the facts, established as aforesaid, will be sufficient for consideration of the points raised by this appeal. The real property in question consists of two separately assessed tracts in St. Louis County. For the year 1975 the Assessor valued the property at $806,230. However, on December 8, 1975, the State Tax Commission reduced the valuation to $634,-218. Taxes on the real property for 1975 were calculated and paid upon the latter valuation. For 1976, the property was again assessed at $806,230. The Assessor gave the owner of the property no notice of the assessment at that figure. The 1976 taxes on the real property were calculated and paid upon a valuation of $806,230. This valuation was shown upon the tax statements. The taxes were paid before December 31, 1976. The owner at the time of paying the taxes did not file with the Collector a written statement protesting all or any part of the taxes so paid. § 139.031(1). The real property was assessed and taxes thereon were paid in like manner for the years 1977, 1978 and 1979.

While the real property had successive owners during those years, all are plaintiffs in this action. They will be collectively referred to as the taxpayer. By the petition in this cause, the taxpayer seeks to recover that portion of the taxes paid for those years resulting from the difference in valuation between $634,218 and $806,230, a total of $55,709.72 plus interest and costs. One named defendant was the Assessor of St. Louis County at the time the petition was filed. He had held that capacity since 1978. The other named defendant was the Collector of St. Louis County at the time the petition was filed. It does not appear how long that named defendant held that capacity. In addition to denials, the defendants by answer alleged recovery was barred by reason of the taxpayer's failure to comply with § 139.031(1).

The taxpayer's basic argument is as follows. The increases in valuation for 1976, 1977, 1978 and 1979 were made by the Assessor without notice and were void. Taxes imposed as a result thereof were illegal. *John Calvin Manor, Inc. v. Aylward,* 517

S.W.2d 59 (Mo.1974) is cited. In the absence of statute, taxes illegally imposed and paid involuntarily or under duress may be recovered in a common law action. The doctrine expressed in *Manufacturer's Casualty Ins. Co. v. Kansas City,* 330 S.W.2d 263, 80 A.L.R.2d 1035 (Mo.App.1959) is relied upon by the taxpayer. The taxpayer then cites the following language: "It does not appear, however, that the legislature intended to abrogate those remedies existing prior to the enactment of sec. 139.031 nor to make the procedure set forth in sec. 139.031 the exclusive remedy available to a taxpayer." *John Calvin Manor, Inc. v. Aylward,* supra, at p. 63. Therefore, it is argued the taxpayer's failure to comply with § 139.-031(1) does not bar recovery of the taxes in question.

There are many questions that could have been raised concerning the taxpayer's right to recover under the common law doctrine. Without limitation, they include the following. Do the uncontroverted facts show the taxes in question were paid voluntarily within the meaning of the common law doctrine? Compare *Franke v. City of St. Louis,* 249 S.W. 379 (Mo.1923); *Robins v. Latham,* 134 Mo. 466, 36 S.W. 33 (1896) with *State ex rel. S.S. Kresge Co. v. Howard,* 357 Mo. 302, 208 S.W.2d 247 (banc 1947); *McGraw-Edison Company v. Curry,* 485 S.W.2d 175 (Mo.App.1972). Does the fact the taxes have been disbursed by the Collector bar the taxpayer's recovery? See *Gas Service Company v. Morris,* 353 S.W.2d 645 (Mo.1962); Annot., Illegal Tax—Liability of Collector, 14 A.L.R.2d 383 (1950). Conceding the valuation was invalidly increased for the first year in question, does it follow the same is true in regard to the subsequent years?

However, the defendants joined issue upon the taxpayer's theory and contend that § 139.031(1) does bar recovery. This appeal will be considered upon the theory adopted by the parties. *Irwin v. Globe-Democrat Publishing Company,* 368 S.W.2d 452 (Mo.1963). This opinion should not be construed as authority by implication upon any facet of the common law remedy that could have been questioned, but was not.

Section 139.031, which was a new section when adopted in 1969, must be reconciled with the remedies available to a taxpayer against the imposition of invalid property taxes existing at the time of its adoption. *Xerox Corp. v. Travers,* 529 S.W.2d 418 (Mo. banc 1975). It must be construed taking into consideration the problems created by those remedies. *Person v. Scullin Steel Company,* 523 S.W.2d 801 (Mo. banc 1975).

At the time § 139.031 was adopted, a taxpayer had three basic remedies. A remedy before an appropriate administrative agency. In regard to an invalid assessment, an appearance before the Board of Equalization with a subsequent appeal to the State Tax Commission. A similar remedy is an application for a refund of taxes paid by reason of a levy which has been declared to be illegal by this Court. § 139.290. While the scope of the remedy has not been definitively defined, the same is true of "any real or tangible personal property tax mistakenly or erroneously paid in whole or in part to the collector." § 139.031(4). A second basic remedy was a common law action to enjoin the collection of taxes invalidly imposed. *St. Louis & S.F. Ry. Co. v. Epperson,* 97 Mo. 300, 10 S.W. 478 (1889). The third basic remedy was a common law action to recover such taxes paid involuntarily or under duress. *State ex rel. S.S. Kresge Co. v. Howard,* supra.

In respect to the latter remedy, a taxpayer was faced with the problem of determining, at his peril, when the payment of such taxes was involuntary as distinguished from voluntary. On the other hand, that remedy could create serious problems for the taxing authority in that no statement of asserted invalidity was required at the time of payment of such taxes. Taxes for several years could be collected and disbursed by the taxing authority in reliance upon the apparent validity of such taxes. A subsequent refund of such taxes could create serious financial problems for the taxing authority. The purpose of statutes similar to § 139.031 has been summarized.

The essential purposes of such statutes are to furnish an adequate and sufficient remedy to the taxpayer, and at the same time to provide an expeditious method by which the various branches of government affected can obtain the revenue necessary for their maintenance without protracted delay or the hazards incident to the former procedure, since it is in effect a procedure to review the decisions of the taxing authorities. Moreover, the statutory requirement is intended not only to furnish proof that the payment was involuntarily made, but also to warn the tax collector that the tax is claimed to be illegal; and the filing of a protest has two purposes, to serve notice on the government of the dissatisfaction of the taxpayer, and to define the grounds on which the taxpayer stands. 84 C.J.S. Taxation § 638 (1974).

It is clear that an application for a refund is the exclusive method for recovery of invalidly imposed sales taxes from the Director of Revenue. *Charles v. Spradling,* 524 S.W.2d 820 (Mo. banc 1975). While that decision is primarily based upon the doctrine of sovereign immunity, it is also observed: "In addition, on grounds of public policy, the law discourages suits for the purpose of recovering taxes alleged to have been illegally levied and collected; and it is for this reason of policy that the remedy of a refund, including time in which it must be filed, is the exclusive remedy." *Charles,* at p. 823.

It is a firmly established principle that when an administrative remedy is adequate, ordinarily that remedy is exclusive. *C & D Inv. Co. v. Bestor,* 624 S.W.2d 835 (Mo. banc 1981). Of course, when because of lack of notice a taxpayer is denied an opportunity to employ an administrative remedy, he will not be denied a judicial remedy. *McGraw-Edison.* However, the availability of an administrative remedy does not bar other remedies under all circumstances. For instance, when a taxpayer does not question the valuation of his property, but asserts it is not subject to the tax, he need not appear before the Board of Equalization but may enjoin the enforcement of the tax. *Washington University v. Baumann,* 341 Mo. 708,

108 S.W.2d 403 (banc 1937). Further, § 139.031 may provide an alternative remedy. Under circumstances similar to *Washington University,* a taxpayer may pay the tax in compliance with § 139.031(1) and recover the taxes so paid by filing suit in compliance with § 139.031(2). *Mesker Brothers Industries, Inc. v. Leachman,* 529 S.W.2d 153 (Mo.1975). Or, when a taxpayer alleges an unconstitutional discriminatory assessment, he may pay the tax imposed as a result thereof in compliance with § 139.-031(1) and recover the same under § 139.-031(2). *Breckenridge Hotels Corp. v. Leachman,* 571 S.W.2d 251 (Mo. banc 1978). However, "[w]here, as is the case here, there is no question of overreaching by the taxing authorities, section *139.031 is not a substitute* for the administrative provisions relating to the assessment of property for tax purposes. That section may not be used by the taxpayer to avoid the time limitations of §§ 137.290, 138.090, 138.100, and 138.110." (Emphasis added). *C & D Inv. Co. v. Bestor,* supra, at p. 838.

The availability of a remedy under § 139.031 has significantly affected the effectiveness of a taxpayer's pursuit of an administrative remedy against the imposition of illegal taxes. Even though a taxpayer has appealed an assessment to the State Tax Commission, to preserve the asserted error, the taxes, if paid, must be paid in compliance with § 139.031(1). *Adcor Realty v. State Tax Com'n.,* 627 S.W.2d 604 (Mo. banc 1982); *Xerox Corporation v. Travers,* supra. The letter of protest must be filed "at the time of paying such taxes" and a letter filed 10 days after such payment is ineffective. *State ex rel. Nat. Inv. Corp. v. Leachman,* 613 S.W.2d 634, 635 (Mo. banc 1981). Further, it is clear that in an action to recover taxes paid under § 139.031(1), the court will consider only the bases of illegality set forth in the letter of protest. *Boyd-Richardson Co. v. Leachman,* 615 S.W.2d 46 (Mo. banc 1981); *Lemay Plastics Div. v. Leachman,* 613 S.W.2d 216 (Mo.App. 1981). In *Boyd-Richardson* a taxpayer argued that it should prevail under Count II of its petition which presented "an equitable cause of action which remains available

to the taxpayer, as it has existed for decades in Missouri, and that the protest action under § 139.031 is not the exclusive remedy to contest a tax" at p. 50. The contention was denied. While the point was not emphasized therein, a case recently decided by this Court is decisive of this appeal. In that case the taxpayers had pending before the State Tax Commission an appeal from an allegedly excessive valuation. The taxpayers paid the taxes based on that valuation accompanied by a letter of protest. However, they failed to file suit as required by § 139.031(2). Under those circumstances it was held the State Tax Commission was required to dismiss the appeal. *Adcor Realty v. State Tax Com'n.,* supra. The action of the circuit court ordering the reinstatement of the appeal "apparently under a theory that the Commission should determine the claims in the framework of the 'common law' " was reversed. *Adcor Realty v. State Tax Comm'n.,* supra, at p. 605.

The establishment of an exclusive remedy against the state for the recovery of taxes illegally collected is not an invasion of constitutional rights, if the remedy afforded is fair and adequate and does not deprive the taxpayer of procedural due process. *Anniston Mfg. Co. v. Davis,* 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143 (1937). Whether or not § 139.031 exclusively prescribes the manner in which a taxpayer must proceed in paying illegally imposed taxes before he may recover such taxes by judicial action was not before this Court in *John Calvin Manor, Inc. v. Aylward,* supra. *McGraw-Edison,* relied upon by the taxpayer, involved taxes paid before § 139.031 was adopted. That case recognizes the power of the state to prescribe "the procedure to be followed and such other terms and conditions . . . ." *McGraw-Edison,* at p. 178. In the circumstances of this case, the remedy under § 139.031 provided the taxpayer a fair and adequate remedy as contrasted with the so-called common law action. It is implicit in the decisions of this Court reviewed above that under such circumstances, the taxpayer's remedy under § 139.-031(1) was exclusive. This is in harmony

with the purpose of the statute. It has been declared to be a part of the common law doctrine: "Assumpsit for money had and received is an appropriate remedy to recover back moneys illegally exacted by a collector as taxes, in all jurisdictions *where no other remedy is given,* unless the tax was voluntarily paid or some statutory conditions are annexed to the exercise of the right to sue, which were unknown, at common law." (Emphasis added). *Cox v. Lott,* 79 U.S. (12 Wall.) 204, 20 L.Ed. 370, 372 (1871). The failure of the taxpayer to comply with § 139.031(1) bars the recovery of the taxes in question.

■ This result is not altered by the taxpayer's emphasis that the assessment upon which the taxes were based has been declared "void", again citing *John Calvin Manor, Inc. v. Aylward,* supra. The term "void" bears many meanings depending upon the context within which it is used. 92 C.J.S. Void and Voidable (1955). It has been appropriately used to define circumstances in which a taxpayer is not required to seek relief before an administrative agency. *Washington University.* It does properly define the effect of an increased assessment without notice in regard to the availability of an injunction against the collection of taxes to be paid upon the illegal assessment. That is how the term was used in *John Calvin Manor Inc. v. Alyward,* supra. The term was also used in regard to an increased assessment in another case relied upon by the taxpayer. But, in that case the court was considering a direct attack upon the action of a Board of Equalization. *State ex rel. Lane v. Corneli,* 351 Mo. 1, 171 S.W.2d 687 (1943). Under circumstances similar to this case, it has been expressly declared that the assessment is voidable but not void. *Wymore v. Markway,* 338 Mo. 46, 89 S.W.2d 9 (1935). While the same may not be applicable under all circumstances, it has been declared, "It was the collector's duty to collect the tax, unless the assessment was void, and it could not be said to be void if the property was subject to taxation." *Ranney v. Bader,* 67 Mo. 476, 479 (1878). It is not necessary to further characterize the increased assessment in-

volved in this case. The taxpayer had notice of the increased assessment before choosing to pay the taxes without complying with § 139.031(1). The irregularity in the assessment is not such to excuse such non-compliance.

■ The taxpayer's next point is that the defendants should be estopped from relying upon § 139.031(1). That point has the following factual background. In July, 1976, in response to the taxpayer's inquiry, an employee in the Assessor's office by letter advised the taxpayer the property had not been reassessed for 1976. Aside from the question of the availability of an estoppel against a political subdivision or a public official, *Horizons West Properties v. Leachman,* 548 S.W.2d 550 (Mo. banc 1977); *State ex rel. Southland Corp. v. City of Woodson Terrace,* 599 S.W.2d 529 (Mo.App.1980), this point is otherwise not valid. An estoppel, such as that asserted by the taxpayer, must be based upon action taken upon reasonable reliance. In each year in question, before the taxes were paid without compliance with § 139.031(1), the taxpayer had knowledge of the assessed valuation upon which the taxes were calculated. The point is denied. *State v. Missouri Utilities Co.,* 339 Mo. 385, 96 S.W.2d 607 (1936).

■ Finally, the taxpayer argues, if all else fails, the summary judgment was improvidently granted because it is at least entitled to recover the taxes paid for 1979 by reason of § 139.031(4). That sub-section authorizes the Collector, upon written application within one year, to refund property taxes "mistakenly or erroneously paid". It is not necessary to determine if taxes correctly computed upon the basis of an intentionally determined assessed valuation and intentionally paid can be considered "mistakenly or erroneously paid". Those interested may start their inquiry with *State ex rel. Crawford Cty., etc. v. Bouse,* 586 S.W.2d 61 (Mo.App.1979).

By this point the taxpayer apparently contends the petition in this action constitutes an application for a refund filed within one year. The summary judgment was

rendered upon the taxpayer's first amended petition, which is the only petition before this Court. It was filed January 23, 1981. That petition makes no reference to a written application for a refund nor to § 139.-031(4). By its answer to interrogatories the taxpayer stated, "each document that relates to, reflects, or evidences" the allegations of the overpayments were attached tax bills and exhibits identified in the depositions of the defendants. There was no reference to the petition.

■ This issue is not "within the scope of the pleadings, or within the broad scope of probable evidence (authorizing an amendment to the pleadings to conform to the proof) as revealed by the 'depositions and admissions on file, together with the affidavits . . . .'" *Scott v. Thornton,* 484 S.W.2d 312, 314 (Mo.1972). "An appellant may not, as a general rule, overturn a summary judgment by raising in the appellate court an issue of fact that was not plainly disclosed as a genuine issue in the trial court." 6 Pt. 2 Moore's Federal Practice § 56.27(1) (1982). There is a vast difference between a written application for a refund within the meaning of § 139.031(4) and a petition praying for judgment upon the basis of an illegal assessment. The taxpayer may not by first raising the point before this Court create an issue that the petition was such an application or that the denial of a refund is subject to review in this action. *Charles; Morris v. Kansas City,* 391 S.W.2d 198 (Mo. 1965); Wright & Miller, Federal Practice and Procedure: Civil § 2716 (1973). The point is denied and the judgment is affirmed.

RENDLEN, C.J., HIGGINS, GUNN and DONNELLY, JJ., and SEILER, Senior Judge, concur.

WELLIVER, J., concurs in result.

BILLINGS, J., not sitting.

BLACKMAR, J., not participating because not a member of the Court when cause was submitted.