**FORD MOTOR CREDIT**
**CO., Appellant,**

v.

**ST. CHARLES COUNTY COLLECTOR**
**OF REVENUE and St. Charles County**
**Assessor, Respondents.**

No. ED 85995.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 26, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 6, 2005.

Application for Transfer Denied
Nov. 1, 2005.

Mary M. Bonacorsi, St. Louis, MO, for Appellant.

Charissa L. Mayes, St. Charles, MO, for Respondent.

ROBERT G. DOWD, JR., Judge.

Ford Motor Credit Company (Ford) brought this suit against the St. Charles County Collector of Revenue and St. Charles County Assessor (collectively referred to as the "County") pursuant to Section 139.031, RSMo 2000,[1] for recovery of personal property taxes "mistakenly or erroneously" paid and for recovery of personal property taxes paid under protest. On appeal, Ford argues the trial court erred in dismissing its petition because (1) the petition sufficiently stated a claim for relief under Section 139.031.5 in that Ford alleged it paid taxes on property it did not own on January 1, 2003; (2) the petition sufficiently stated a claim for relief under Section 139.031.1–4 in that the petition alleged that Ford paid taxes on the vehicles under protest and was not the owner of the vehicles on January 1, 2003; and (3) Ford's petition properly stated a claim for refund in that Ford was not the owner of the vehicles on January 1, 2003 and had no duty to exhaust administrative appeals by

---

1. Unless otherwise indicated, all further statutory references are to RSMo 2000.

appealing to the St. Charles County Board of Equalization (Board). We reverse.

As part of its business, Ford owns motor vehicles which it leases to customers in St. Charles County, Missouri. Each year, it pays personal property taxes on all vehicles located in St. Charles County which it owned on January 1 of the taxable year. In 2003, Ford converted its inventory data on vehicles which it leased to Missouri customers and used the newly converted data for 2003 tax assessment purposes in St. Charles County, Missouri. Due to an error in Ford's inventory data conversion, Ford reported to the St. Charles County Assessor that it owned 258 motor vehicles which it did not own on January 1, 2003.[2] As a result, St. Charles County assessed personal property taxes on vehicles which Ford did not own.

On December 8 and 9, 2003, Ford timely paid personal property taxes on 258 motor vehicles under protest, in the amount of $62,822.30.

Ford filed its Petition in the St. Charles County Circuit Court within 90 days of paying its personal property taxes under protest as provided in Section 139.031.1–4. Additionally, Ford filed its petition within 3 years after "mistakenly or erroneously" paying taxes on property it did not own as provided in Section 139.031.5. Ford's petition sought a declaration that it was not the owner of the subject vehicles and did not owe taxes on such vehicles which it paid under protest; that it mistakenly or erroneously paid taxes on the subject vehicles within the meaning of Section 139.031.5; that it was not required to appeal assessment of such taxes to the Board; and, that it is entitled to a refund of taxes paid under protest in the amount of $62,822.30 as provided in Section 139.031.

On September 8, 2004, the County filed its motion to dismiss Ford's petition. As grounds for its motion, the County claimed that Ford was required to exhaust administrative remedies before the Board and that its payment of taxes on the vehicles was not mistaken or erroneous within the meaning of Section 139.031.5. The trial court granted the motion. This appeal follows.

Because Point II is dispositive of this appeal, we need not address the remaining two points.[3]

■ In its second point, Ford argues the trial court erred in dismissing its petition because the petition sufficiently stated a claim for relief under Section 139.031.1–4

---

**2.** Ford supplied the County with a list of all its tangible personal property situated in St. Charles County for ad valorem taxes on February 24, 2003.

**3.** We briefly note that Ford had no duty or right to exhaust its administrative remedies by appealing to the Board or to the State Tax Commission before filing its petition in circuit court. Under Section 138.430, which provides that "[e]very owner of real property or tangible personal property shall have the right to appeal from the local boards of equalization to the state tax commission ...," the right to appeal tax assessments from the Board to the State Tax Commission is reserved only to an "owner" of assessed property. *See also O'Flaherty v. State Tax Com'n of*

*Missouri,* 680 S.W.2d 153, 155–156 (Mo. banc 1984) and *City of Richmond Heights v. Bd. of Equalization,* 586 S.W.2d 338, 341 (Mo. banc 1979)(holding that only the property owner has the right to appeal property tax assessments under Missouri law). We further note that under Sections 138.030 and 138.040, the powers and duties of the Board and State Tax Commission are limited to valuation and not to issues of property ownership. Here, since Ford alleged in its petition that it was not the owner of the 258 vehicles on which it was assessed, it was not obligated to exhaust administrative appeals. Furthermore, the powers of the Board and State Tax Commission would not have extended to determining Ford's ownership of said vehicles.

in that the petition alleged that Ford paid taxes on the vehicles under protest and was not the owner of the vehicles on January 1, 2003. We agree.

A motion to dismiss for failure to state a claim is solely a test of the adequacy of the plaintiff's petition; therefore, on appeal, we accept as true all well-pled allegations in the petition and liberally grant the plaintiff all reasonable inferences drawn there from. *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 306 (Mo. banc 1993). We do not attempt to weigh whether the alleged facts are credible or persuasive. *Id.* "Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." *Id.*

Section 139.031.1–4 allows taxpayers to pay disputed taxes under protest and seek a refund of those taxes by filing suit in the circuit court within ninety (90) days after payment of the taxes. Section 139.031.1–4 states as follows:

1. Any taxpayer may protest all or any part of any current taxes assessed against the taxpayer, except taxes collected by the director of revenue of Missouri. Any such taxpayer desiring to pay any current taxes under protest shall, at the time of paying such taxes, file with the collector a written statement setting forth the grounds on which the protest is based. The statement shall include the true value in money claimed by the taxpayer if disputed.

2. Upon receiving payment of current taxes under protest pursuant to subsection 1 of this section or upon receiving notice of an appeal pursuant to Section 138.430, RSMo, the collector shall disburse to the proper official all portions of taxes not disputed by the taxpayer and shall impound in a separate fund all portions of such taxes which are in dispute. Except as provided in subsection 3 of this section, every taxpayer protesting the payment of current taxes shall, within ninety days after filing his protest, commence an action against the collector by filing a petition for the recovery of the amount protested in the circuit court of the county in which the collector maintains his office. If any taxpayer so protesting his taxes shall fail to commence an action in the circuit court for the recovery of the taxes protested within the time prescribed in this subsection, such protest shall become null and void and of no effect, and the collector shall then disburse to the proper official the taxes impounded, and any interest earned thereon, as provided above in this subsection.

3. No action against the collector shall be commenced by any taxpayer who has, for the current tax year in issue, filed with the state tax commission a timely and proper appeal of the protested taxes. Such taxpayer shall notify the collector of the appeal in the written statement required by subsection 1 of this section. The taxes so protested shall be impounded in a separate fund and the commission may order all or any part of such taxes refunded to the taxpayer, or may authorize the collector to release and disburse all or any part of such taxes in its decision and order issued pursuant to Chapter 138, RSMo.

4. Trial of the action in the circuit court shall be in the manner prescribed for nonjury civil proceedings, and, after determination of the issues, the court shall make such orders as may be just and equitable to refund to the taxpayer all or any part of the current taxes paid under protest, together with any interest earned thereon, or to authorize the collector to release and disburse all or

any part of the impounded taxes, and any interest earned thereon, to the appropriate officials of the taxing authorities. Either party to the proceedings may appeal the determination of the circuit court.

The purpose of Section 139.031 is to "furnish an adequate and sufficient remedy to the taxpayer, and at the same time to provide an expeditious method by which the various branches of government affected can obtain the revenue necessary.... Moreover, the statutory requirement is intended not only to furnish proof that the payment was involuntarily made, but also to warn the tax collector that the tax is claimed to be illegal." *B & D Investment Company, Inc. v. Schneider*, 646 S.W.2d 759, 762 (Mo. banc 1983).

Section 139.031 has been used by taxpayers as a means to recover taxes paid under protest and alleged to be void, invalid or unlawful. *Id.* at 762–763; *Breckenridge Hotels Corp. v. Leachman*, 571 S.W.2d 251, 251–252 (Mo. banc 1978); *Mesker Brothers Industries, Inc. v. Leachman*, 529 S.W.2d 153, 155 (Mo. banc 1975).

In this case, Ford filed its petition within 90 days of paying its personal property taxes under protest as provided in Section 139.031.2. Ford's petition alleged that Ford paid 2003 property taxes on 258 motor vehicles on December 8 and 9, 2003, the amount of such taxes, and that such taxes were paid under protest. It further alleged as the basis for the protested payment that the vehicles were leased, that the leases were terminated prior to January 1, 2003 and that Ford was not owner of the vehicles on January 1, 2003. Ford's petition contained the necessary allegations to advise the County of the claim and of the relief demanded. Point granted.

Judgment reversed.

PATRICIA L. COHEN, P.J. and KATHIANNE KNAUP CRANE, J., concur.