**KRAFT, INC., Appellant,**

v.

**MISSOURI FARMER'S ASSOC., INC., Respondent.**

No. 17335.

Missouri Court of Appeals, Southern District, Division One.

Sept. 20, 1991.

J.D. Baker, Baker & Dull, Osceola, for respondent.

PARRISH, Judge.

Appellant, Kraft, Inc. (Kraft), appeals from a judgment in garnishment. Rule 90.17. The judgment was entered for respondent, Missouri Farmer's Association, Inc. (MFA), against Kraft for "sums due under garnishment." The judgment was directed to sums Kraft owed Kenneth Nance and Carol Nance, MFA's judgment debtors, for milk Kraft had purchased from them. This court affirms.

Kraft presents one point on appeal. Kraft contends that "[t]he trial court erred in denying defendant Kraft's Motion for Summary Judgment, Motion for Directed Verdict made at the close of all the evidence during the trial, Motion for Judgment Notwithstanding the Verdict, and Motion for New Trial" for the reason that "Kraft was entitled to judgment as a matter of law based on the Food Security Act of 1985, 7 USC § 1631."

The garnishment that was directed to Kraft was the result of MFA's attempt to collect a judgment it had obtained against Kenneth Nance and Carol Nance. Kraft contends that the chose in action to which MFA's garnishment was directed—the debt Kraft owed Kenneth Nance and Carol Nance—was not subject to garnishment. Kraft bases that argument upon the premise that 7 U.S.C. § 1631 applies to preempt Missouri's garnishment statutes from applying in this case. Kraft contends that because the debt it owed to the Nances arose from the purchase of milk, a farm product, § 1631 applies. The substantive provision of 7 U.S.C. § 1631 that Kraft contends is applicable to this case is subsection (d). It states:

> Except as provided in subsection (e)[1] of this section and notwithstanding any other provision of Federal, State, or local law, a buyer who in the ordinary course

Richard E. Davis, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for appellant.

---

**1.** Subsection (e) prescribes a procedure that a secured party may follow in order to cause a buyer of farm products to take those products subject to an existing security interest (subsection (e)(1)(A)). It also establishes procedures that may be followed in states that have central filing systems in order to cause a buyer of farm products to take them subject to existing security interests (subsections (e)(2) and (e)(3)). Subsection (e) is not applicable to the facts of this case.

of business buys a farm product from a seller engaged in farming operations shall take free of a security interest created by the seller, even though the security interest is perfected; and the buyer knows of the existence of such interest. (Footnote added.)

Kraft cites 7 U.S.C. § 1631 and three cases, *Ensminger v. Burton*, 805 S.W.2d 207 (Mo.App.1991); *First Nat'l Bank v. Lamoni Livestock Sales*, 417 N.W.2d 443 (Iowa 1987); and *North Central Kansas Prod. Credit Ass'n v. Washington Sales Co.*, 223 Kan. 689, 577 P.2d 35 (1978), in support of its point on appeal. This court, in its review of that authority, finds nothing helpful to Kraft.

The cases cited by Kraft do not involve the application of 7 U.S.C. § 1631. Kraft cites two of the three cases, the *First Nat'l Bank* case and the *North Central Kansas Prod. Credit Ass'n* case, to show "[t]he pre–§ 1631 effects of the farm products exception." The "farm products exception" is found in § 9–307(1) of the Uniform Commercial Code (U.C.C.). Section 9–307(1) of the U.C.C. has been enacted in Missouri as § 400.9–307(1), RSMo 1986. It states:

A buyer in ordinary course of business ... *other than a person buying farm products*[2] *from a person engaged in farming operations* takes free of a security interest created by his seller even

though the security interest[3] is perfected and even though the buyer knows of its existence. (Emphasis and footnotes added.)

The farm products exception "involves buying farm products from a person engaged in farming operations. Such buyers do not take free from a prior perfected security interest...." Clark, *The Law of Secured Transactions Under the Uniform Commercial Code* § 3.04[4] (2d ed.1988).

In *First Nat'l Bank v. Lamoni Livestock Sales, supra,* and in *North Central Kansas Prod. Credit Ass'n v. Washington, supra,* the "farm products exception" was upheld. Both cases determined that a security interest in farm products sold by one engaged in farming operations continued so that the holder of the security interest had recourse against the third party purchasers of the farm products. *See First Nat'l Bank,* 417 N.W.2d at 445–46; and *North Central,* 577 P.2d at 40.

Kraft refers to *Ensminger v. Burton, supra,* to show another effect of the "farm products exception." In *Ensminger,* a case that arose prior to the enactment of 7 U.S.C. § 1631, the court held that an auctioneer who sold farm products owned by a consignor and encumbered by a security interest was liable in conversion or "the modern action" of "tortious interference

---

**2.** "Farm products" is defined for purposes of 7 U.S.C. § 1631 as "an agricultural commodity such as wheat, corn, soybeans, or a species of livestock such as cattle, hogs, sheep, horses, or poultry used or produced in farming operations, or a product of such crop or livestock in its unmanufactured state (such as ginned cotton, wool-clip, maple syrup, milk, and eggs), that is in the possession of a person engaged in farming operations." 7 U.S.C. § 1631(c)(5). "Farm products" is similarly defined in the U.C.C. in the form it has been enacted in Missouri. Section 400.9–109(3), RSMo 1986, defines "[f]arm products" as "[g]oods" that "are crops or livestock or supplies used or produced in farming operations or if they are products of crops or livestock in their unmanufactured states (such as ginned cotton, woolclip, maple syrup, milk and eggs), and if they are in the possession of a debtor engaged in raising, fattening, grazing or other farming operations. If goods are farm products they are neither equipment nor inventory."

"Goods" for purposes of the U.C.C. as enacted in Missouri is defined in § 400.9–105(1)(f), RSMo 1986, as "all things which are movable at the time the security interest attaches or which are fixtures (section 400.9–313), but does not include money, documents, instruments, accounts, chattel paper, general intangibles, contract rights and other things in action. **'Goods'** also includes the unborn young of animals and growing crops."

**3.** "Security interest" is defined for purposes of 7 U.S.C. § 1631 as "an interest in farm products that secures payment or performance of an obligation." 7 U.S.C. § 1631(c)(7). That term is similarly defined in the U.C.C. as enacted in Missouri in § 400.1–201(37), RSMo 1986, as "an interest in personal property or fixtures which secures payment or performance of an obligation."

with the right of possession." *Ensminger,* at l.c. 211.

Kraft makes other references to *Ensminger v. Burton, supra,* that are somewhat nebulous and, in one respect, inaccurate. In *Ensminger,* cattle were sold that were subject to a security interest. The sale occurred at a consignment auction without consent of the holder of the security interest. The sale was made prior to the enactment of 7 U.S.C. § 1631, but the statute was enacted before the case was decided on appeal.

Kraft's brief erroneously states that the court in *Ensminger* "held that an auction house which sold mortgaged goods under the direction of its principal was liable as a converter *despite 7 USC § 1631* and the fact that it acted without knowledge of the security interest." (Emphasis added.) *Ensminger* did not so hold. The *Ensminger* opinion acknowledged that 7 U.S.C. § 1631, when enacted, preempted the farm products exception included in § 400.9–307(1), RSMo 1986. *See Ensminger,* at l.c. 216. The court specifically stated, "The Act [7 U.S.C. § 1631] also protects *commission merchants* and *selling agents* who sell farm products in ordinary course of business, and so effectively *abrogates the rule of strict liability for conversion* that [*Farmers State Bank v.*] *Stewart,* [454 S.W.2d 908, 915 (Mo. banc 1970)] reaffirms and we are bound to follow." *Id.* The reference to *Farmers State Bank v. Stewart* is directed to the following holding in that case:

> [A]n agent, factor, commission merchant or auctioneer who receives property from his principal and sells it and pays the proceeds of the sale to him is guilty of conversion if the principal has no right to sell the property, even though the agent acts without knowledge of the defect in the title.

454 S.W.2d at 915.

■ In this case there was no attempt to impose liability on Kraft because of any security interest created by the seller of farm products. Kraft was indebted to the Nances. Kraft's liability was imposed by reason of its business dealings with the Nances, not because of a security interest that the Nances, as sellers of farm products, had created. Kraft owed for milk it had purchased from the Nances in a routine business transaction. Kraft had not paid that debt at the time it was served with a notice of garnishment and summons. The debt Kraft owed the Nances was the subject of the garnishment proceeding. The garnishment proceeding had been brought by MFA in order to collect a judgment it had against the Nances. MFA interceded in the indebtedness transaction between Kraft and the Nances with its garnishment so that the sum Kraft would otherwise have paid to the Nances would be paid to MFA. Kraft was subjected to no additional liability than existed prior to the garnishment.

> A garnishment action is a proceeding in rem. Its function is to bring within the jurisdiction and power of the court *the debt or chose in action and impress it with the lien of the judgment* in aid of the execution. (Emphasis added.)

*Blanton v. U.S. Fidelity & Guar. Co.,* 680 S.W.2d 206, 208 (Mo.App.1984).

Garnishment proceedings are statutory proceedings separate and apart from the U.C.C. They are governed by chapter 525, RSMo 1986, and Rule 90. A plain reading of 7 U.S.C. § 1631(d) discloses that it does not apply in this case. The person protected by that act is "a buyer who in the ordinary course of business buys a farm product from a seller engaged in farming operations." Such a person "shall take free of a security interest created by the seller." Kraft was not such a person. MFA had no security interest in the milk the Nances sold Kraft. Kraft's contention that the judgment in garnishment rendered by the trial court was precluded by 7 U.S.C. § 1631 is denied.

A more difficult question is presented by a motion respondent has filed. That motion was ordered taken with the case. It is denominated "Motion for Assessment of Damages for a Frivolous Appeal Pursuant to Rule 84.19." Respondent contends, by the motion, that the appeal taken in this case is frivolous in that it presents " 'no

justiciable question and is so readily recognizable as devoid of merit on the face of [the] record that there is little prospect that it can ever succeed.' *Mullen v. Kennard,* 674 S.W.2d 202 (Mo.App.W.D., 1984)." Respondent asks this court to assess damages against appellant for frivolous appeal. Respondent points to the fact that appellant filed "a single issue appeal" and that the issue presented—whether 7 U.S.C. § 1631 preempts Missouri's garnishment law—is readily answered by the language of the federal act itself.

Appellant's response includes the assessment, "The case at bar appears to be a case of first impression, not only in this jurisdiction but throughout the United States of America." One might speculate that the issue has not arisen elsewhere (or previously in Missouri) because it is obviously devoid of merit.

■ This court is further troubled by the fact that appellant responded to the motion by filing its own motion entitled, "Motion for Assessment of Damages for Replying to Respondent's Motion for a Frivolous Appeal Pursuant to Rule 55.03." By that motion appellant asks this court "to assess damages against the Respondent for frivolously making a 'Motion for a Frivolous Appeal' pursuant to Rule 55.03." Given the close question of whether the appeal is frivolous, appellant's response is, at best, inappropriate.[4] Appellant's motion is denied.

■ At a time when costs of litigation are high, there is a need to assure that unmeritorious claims are not unreasonably pursued. The assessment of damages for frivolous appeals is intended to be a deterrent (although none should be required) from such conduct. Although an argument may be made that the simplicity of the issue presented in this case, and its capacity for apparent resolve, is characteristic of a frivolous appeal, the assessment of damages is a drastic measure that this court does not favor. Being mindful that "[g]ood faith is shown even by the presence of some slight merit," *Lebedun v.*

*Robinson,* 768 S.W.2d 219, 223 (Mo.App. 1989), this court, believing that the authority to assess damages for frivolous appeal rests within its sound discretion, chooses not to grant respondent's motion. Nevertheless, the warning should be noted that if there are those who are prone to file an appeal without thorough review and comprehensive assessment of its merit, or lack thereof, they should exercise caution.

The judgment in garnishment is affirmed. The motion for damages for frivolous appeal and the motion for damages for responding thereto are denied.

MONTGOMERY, J., concurs.

CROW, J., concurs in part and dissents in part in separate opinion filed.

CROW, Judge, concurring in part and dissenting in part.

I agree wholeheartedly with the principal opinion's denial of Kraft's point on appeal and Kraft's motion for damages per Rule 55.03. I disagree with the principal opinion only in its denial of MFA's motion for damages against Kraft for a frivolous appeal.

As the principal opinion compellingly demonstrates, Kraft's attack on the judgment is patently destitute of merit. Kraft's contention that 7 U.S.C. § 1631 applies to the garnishment here is ludicrous. Indeed, it is astonishing such a proposition could be presented with a straight face.

While Kraft's characterization of the case as one of first impression may be accurate, the same could be said of a contention that the sun rises in the west.

I would award MFA reasonable damages per Rule 84.19.

---

4. The motion filed by appellant's counsel suggests the image of two small boys drawing lines on the ground and suggesting that the other cross the line.